10 A.3d 211

HOPEWELL VALLEY CITIZENS' GROUP, INC., PLAINTIFF–AP-PELLANT, v. BERWIND PROPERTY GROUP DEVELOPMENT CO., L.P., D/B/A CARTER ROAD CE, LLC, C/O BPG PROPER-TIES, LTD; HOPEWELL TOWNSHIP; HOPEWELL TOWNSHIP COMMITTEE; AND HOPEWELL TOWNSHIP PLANNING BOARD, DEFENDANTS–RESPONDENTS.

Argued October 26, 2010—Decided January 12, 2011.

*Katherine V. Dresdner* argued the cause for appellant.

*Jonathan M. Preziosi* argued the cause for respondent BPG Development Company, L.P. (*Pepper Hamilton,* attorneys; *Mr. Preziosi* and *Thomas M. Letizia,* of counsel; *Mr. Preziosi, Mr. Letizia* and *Michael T. Pidgeon,* on the brief).

*Trishka Waterbury* argued the cause for respondent Hopewell Township Planning Board (*Mason, Griffin & Pierson,* attorneys).

*Susan J. Kraham* submitted a brief on behalf of amicus curiae New Jersey Conservation Foundation (*Morningside Heights Legal Services Environmental Law Clinic Columbia University School of Law,* attorneys; *Ms. Kraham* and *Edward L. Lloyd,* on the brief).

Justice LONG delivered the opinion of the Court.

Over the objections of members of the public, the Planning Board (Board) of Hopewell Township (Township) granted preliminary site plan approval to the Berwind Property Group Development Co., L.P. (BPG) to develop a parcel of real estate on Carter Road in the Township. On September 27, 2008, BPG published a notice of the resolution in a newspaper of general circulation, and notified the Board of its action. On October 2, 2008, the Board published a second notice in another local newspaper. A pro se objector contacted the Board and was informed that the notice had been published on October 2, 2008.

In reliance on that information, the objector calculated the forty-five-day period within which to bring an action in lieu of prerogative writs and filed a complaint on November 17, 2008, against BPG, the Board, the Township, and the Township Committee (collectively, defendants). Defendants moved to dismiss the complaint as untimely based on the forty-five-day window provided by the first publication. The objector contended she was misled by the information conveyed by the Board and that the representation regarding the later publication date warranted enlargement of the limitations period. The trial court disagreed, as did the Appellate Division.

We granted certification, 201 *N.J.* 497, 992 *A.*2d 792 (2010), and now reverse. We conclude that the circumstances presented in this case satisfy the standards in *Rule* 4:69–6(c) and warrant enlargement of the forty-five-day period because "it is manifest that the interest of justice so requires." This ruling is not intended as a comment on the merits of the complaint, but only on the timeliness of its filing.

I.

At the heart of this matter is a 359.8 acre parcel of real

property (the property) located on Carter Road, in the Township.[1] The property is presently zoned "RO–3" (Research/Office). In 1999, the prior owner of the property (Townsend Property Trust, L.P.) received approval for a general development plan (GDP) from the Board. The property is presently owned by BPG. In 2005, BPG sought and received a two-year extension of the vesting period for the Townsend proposal, which is currently set to expire on May 19, 2011. On November 15, 2006, BPG filed an application for preliminary site plan approval that was deemed complete in late 2007. In it, BPG proposed eight buildings for the property, totaling 800,000 square feet, as well as the addition of a daycare center, parking, interior roads, and a new wastewater treatment plant.

Thirteen public hearings on the application were held between January and May 2008. At those meetings, witnesses appeared and members of the public voiced their concerns over the development proposed by BPG. Among those concerns were the environmental impact of clear-cutting numerous mature trees which are habitat for endangered species; stream encroachment; and the inadequacy of waste and storm water facilities.

The Board approved the preliminary site plan on May 29, 2008. The approval was memorialized in a forty-three-page resolution adopted September 25, 2008. That resolution placed many conditions on the development of the property, including, among others, provision of additional information concerning wastewater processing needs and capabilities; modifications to the storm water management system to ensure proper functioning and non-interference with the public; and further investigation of the groundwater issue.

On September 27, 2008, BPG caused a notice of the resolution to be published in *The Trenton Times*, a daily newspaper of general circulation. On October 1, 2008, BPG informed the Board Secre-

---

[1] Because the complaint was dismissed before trial, the facts are drawn from the documents on file before the trial court.

tary–Administrative Officer,[2] Joan Kiernan–O'Toole, of the publi-
cation and provided an affidavit of publication to her via e-mail.
The e-mail indicated that "[t]he 45–day appeal period will run until
November 11, 2008." The day after the e-mail, October 2, 2008,
the Board re-published notice of the resolution, that time in *The
Hopewell Valley News,* a weekly newspaper of general circulation.

In October, Sheila Fields, a future member of the yet-to-be-
formed Hopewell Valley Citizens' Group, Inc. (Citizens), and an
objector who appeared at the site plan hearings, telephoned
Kiernan–O'Toole and asked "when and where the Notice of Deci-
sion had been published to calculate the time for filing an appeal."
Kiernan–O'Toole informed Fields that the notice had been publish-
ed in *The Hopewell Valley News* on October 2, 2008. As she
explained in a certification in opposition to the motion:

> As is my standard practice, I did not volunteer any additional information. Indeed,
> I am not certain that I even knew or remembered at the time of the phone call that
> BPG had also published a notice of the Board's action. Instead, as is my standard
> practice, I provided only the information over which I have control, which is the
> date on which *the Board* published the notice of its action. I was not aware at the
> time that the caller was an objector or potential plaintiff, nor was there any
> attempt on my part to be misleading.

In reliance on that information, Fields (and Citizens) calculated
that the forty-five-day period within which to bring a challenge
would expire on November 17, 2008.

On November 17, 2008, Citizens [3] filed a complaint in lieu of
prerogative writs in the Superior Court, Law Division against
defendants. The complaint set forth Citizens' concerns about the

---

[2] The Board Secretary performs secretarial work, including the making of a
verbatim record of all proceedings; signing the plans and resolutions of the
Board; and any other normal secretarial functions. The Administrative Officer,
however, performs all administrative and managerial work, including circulating
materials to the Board members, preparing all official correspondence and
compiling all records required to be kept, and providing notice of meetings
under the Open Public Meetings Act or the Municipal Land Use Law; and
maintaining custody of all records.

[3] At the time of filing its complaint, Citizens was an unincorporated associa-
tion. Citizens later transformed into a non-profit corporation.

"unreasonably adverse impact on the surrounding area as well as on the environment and natural resources" the project would have on the property. Those concerns included: the clear-cutting of nearly 3,000 trees; the concomitant impairment of habitat for endangered species; the encroachment on protected tributaries; fraud or mistake; and the inadequacy of waste and storm water facilities; to name a few.

After filing the complaint, Citizens did not immediately serve defendants. BPG learned of the existence of the complaint when, on December 3, 2008, a representative of *The Trenton Times* contacted it to inquire about the case. A few days later, on December 11, 2008, all defendants moved to dismiss the complaint for failure to state a claim upon which relief could be granted.

Defendants argued that Citizens lacked standing; that its complaint was untimely; and that Citizens had failed to serve each defendant with a summons and complaint within the required time. The Township and the Township Committee also argued that Citizens had not stated a cause of action against them.

Citizens countered that its reasonable reliance on Kiernan–O'Toole's representation of the publication date justified enlargement of the limitations period under *Cohen v. Thoft,* 368 *N.J.Super.* 338, 845 *A.*2d 1281 (App.Div.2004). Moreover, based on the "totality of the equitable circumstances" presented, Citizens argued that it was entitled to enlargement because it was advancing environmental issues with broad impact on the public. As to the failure to serve defendants, counsel for Citizens urged that her client should not be penalized for her error.

The trial court found Citizens had standing to pursue its claim and rejected defendants' argument regarding service.[4] However, the court denied Citizens' motion for an enlargement of time under *Rule* 4:69–6(c) and found no manifest injustice in its denial. In ruling, the court distinguished the circumstances presented in

---

[4] Defendants did not cross-appeal from the trial court's rulings on standing and service.

this case from those of the pro se plaintiff in *Cohen v. Thoft,*
*supra,* reading that case to require an affirmative showing of
deliberate deception, which all parties agree is not the case here.
The court concluded, as well, that if an attorney expects to
challenge a land use decision, he should "begin taking steps
immediately after the adoption of the resolution to peruse the
newspapers and to find out whether or not notice has been given,
and it's not the responsibility of anyone else, quite frankly."

Citing *Brunetti v. New Milford,* 68 *N.J.* 576, 350 *A.*2d 19 (1975),
the court applied a three-part standard that asked whether the
matter presented a novel or constitutional claim; whether it
involved an ex parte determination; or whether it implicated a
matter of great public interest. In the absence of one of those
categories, the court held that an enlargement could not be
granted. Because the court concluded that none of the *Brunetti*
factors were implicated in the case, it declined to enlarge the *Rule*
4:69–6 limitations period and granted the motions to dismiss.

Citizens appealed and the Appellate Division affirmed "substan-
tially for the reasons expressed" by the trial court, differing only
in its conclusion that "there may be circumstances that warrant an
enlargement of time other than the [three] traditional categories"
of *Brunetti*. In ruling, the panel commented that "[t]hose circum-
stances may include affirmative attempts to mislead or confuse
objectors about the date of publication, [*Cohen, supra,* 368 *N.J.Su-*
*per.* at 347, 845 *A.*2d 1281], or challenges to the validity of an
ordinance not adopted in conformity with applicable statutory
requirements, *Reilly v. Brice,* 109 *N.J.* 555, 560–61 [538 *A.*2d 362]
(1988)." The panel concluded that Citizens had failed to show any
effort by BPG to mislead them, or any suggestion that the zoning
ordinance itself was invalid. Likewise, the panel declined to
embrace Citizens' argument that the issues it presented constitut-
ed public interests and found the objections to be "normal" for a
land use case. We granted Citizens' petition for certification. 201
*N.J.* 497, 992 *A.*2d 792 (2010).

## II.

Citizens' arguments can be boiled down to the following: the complaint in lieu of prerogative writs raised important issues of public interest, a category excluded from the rule governing limitations of actions, and that, in any event, an enlargement of time should have been granted under *Rule* 4:69–6(c) and *Cohen v. Thoft,* to avoid a manifest injustice. Amicus New Jersey Conservation Foundation's arguments are aligned with those of Citizens.

BPG counters that the trial court's conclusion of no manifest injustice cannot be faulted; that no important public interest is implicated in the case; and that it has been prejudiced by the delay, having expended approximately $10,000 between the resolution and belated service of process. The Board, the Township, and the Township Committee contend that Citizens lacked diligence in determining the time constraints on the filing of the complaint and that no public interest is implicated.

## III.

■ The preliminary site plan approval in this case was issued pursuant to the provisions of the Municipal Land Use Law (MLUL), *N.J.S.A.* 40:55D–1 to –163. The MLUL provides, in relevant part, that:

i. A brief notice of the decision shall be published in the official newspaper of the municipality, if there be one, or in a newspaper of general circulation in the municipality. Such publication shall be arranged by the applicant unless a particular municipal officer is so designated by ordinance; provided that nothing contained in this act shall be construed as preventing the applicant from arranging such publication if he so desires. The municipality may make a reasonable charge for its publication. The period of time in which an appeal of the decision may be made shall run from the first publication of the decision, whether arranged by the municipality or the applicant.

[*N.J.S.A.* 40:55D–10(i).]

Appeals from local land use decisions are accomplished by actions in lieu of prerogative writs. *R.* 4:69–1 to –7; *see* Pressler & Verniero, *Current N.J. Court Rules,* Comment 1 on *R.* 4:69 (2011); *see generally, New Jersey Shore Builders Ass'n v. Twp. of Jackson,* 199 *N.J.* 38, 47, 970 *A.*2d 992 (2009); *see also Twp. of*

*West Orange v. 769 Assocs.*, 198 *N.J.* 529, 533, 969 *A.*2d 1080 (2009) (challenge to approval of subdivision instituted by an action in lieu of prerogative writs). *Rule* 4:69–6 sets forth the time limitations on the institution of such actions. Subsection (a) acknowledges a general limitations period of forty-five days "after the accrual of the right to the review, hearing or relief claimed...." *R.* 4:69–6(a). Subsection (b) qualifies that broad limitation, detailing eleven specific exceptions to the general rule, the applicability of which are determined based on the nature or context of the challenge. *R.* 4:69–6(b)(1)–(11). Relevant to this case, the rule prescribes:

> (b) Particular Actions. No action in lieu of prerogative writs shall be commenced ....
>
> (3) to review a determination of a planning board or board of adjustment, or a resolution by the governing body or board of public works of a municipality approving or disapproving a recommendation made by the planning board or board of adjustment, after 45 days from the publication of a notice once in the official newspaper of the municipality or a newspaper of general circulation in the municipality....
>
> [*R.* 4:69–6(b)(3).]

Subsection (c) of the rule provides: "The court may enlarge the period of time provided in paragraph (a) or (b) of this rule where it is manifest that the interest of justice so requires." *R.* 4:69–6(c).

It is undisputed that Citizens failed to meet the deadline imposed by *Rule* 4:69–6(b)(3), insofar as it did not file its complaint within forty-five days of the first notice published by the developer. Rather, it was six days out of time because it was filed within forty-five days of the second notice. Our task is to determine whether Citizens is entitled, in the "interest of justice," to an enlargement under *Rule* 4:69–6(c), and, hence, to an adjudication of the merits of its claim.

## IV.

The methodology employed when this Court interprets one of its rules mirrors the manner in which statutes are con-

strued. *Wiese v. Dedhia,* 188 *N.J.* 587, 592, 911 *A.*2d 479 (2006). Thus,

> [w]hen interpreting court rules, we ordinarily apply canons of statutory construction. *E.g., First Resolution Inv. Corp. v. Seker,* 171 *N.J.* 502, 511 [795 *A.*2d 868] (2002); *Douglas v. Harris,* 35 *N.J.* 270, 278 [173 *A.*2d 1] (1961) (applying canons of construction in interpreting court rule). Accordingly, as with a statute, the analysis must begin with the plain language of the rule. *DiProspero v. Penn,* 183 *N.J.* 477, 492 [874 *A.*2d 1039] (2005). The Court must "ascribe to the [words of the rule] their ordinary meaning and significance ... and read them in context with related provisions so as to give sense to the [court rules] as a whole...." *Id.* at 492 [874 *A.*2d 1039] (citations omitted). If the language of the rule is ambiguous such that it leads to more than one plausible interpretation, the Court may turn to extrinsic evidence. *Id.* at 493 [874 *A.*2d 1039].
>
> [*Ibid.* (interpreting *R.* 4:58–2).]

In accordance with that interpretive scheme, the analysis in this case must begin with the plain language of *Rule* 4:69–6(c): "Enlargement. The court may enlarge the period of time provided in paragraph (a) or (b) of this rule where it is manifest that the interest of justice so requires." The word "may" generally indicates the permissiveness of the behavior described, *see, e.g., In re Freshwater Wetlands Protection Act Rules,* 180 *N.J.* 415, 432, 852 *A.*2d 167 (2004) (describing statute's use of "may" as indication of permissiveness), and that meaning is consistent with this Court's prior treatment of the determination to enlarge a timeframe under paragraph (c) as an "exercise of judicial discretion," *see Reilly, supra,* 109 *N.J.* at 560, 538 *A.*2d 362. The word "manifest" means "to show plainly or make palpably evident or certain by showing or displaying...." *North Jersey Sav. and Loan Ass'n v. Fidelity and Deposit Co.,* 283 *N.J.Super.* 56, 65, 660 *A.*2d 1287 (Law Div.1993) (quoting *Webster's Third New International Dictionary* (1986)). Thus, the plain language of paragraph (c) suggests that a court has discretion to enlarge a *Rule* 4:69–6(a) or (b) timeframe when it perceives a clear potential for injustice.

## V.

Our prior case law is instructive regarding the outcome here, insofar as it reveals the circumstances in which we have held the rule applicable. Our earliest decision was in *Schack v. Trimble,* 28

*N.J.* 40, 145 *A.*2d 1 (1958). There, the Schacks sought a building permit that was denied and they pursued a variance that was, likewise, denied. *Id.* at 44, 145 *A.*2d 1. More than a year later, they submitted revised plans in the hope of obtaining a building permit; the request was again denied and an action in lieu of prerogative writs followed. *Ibid.* The defendants argued that the action was barred because it was commenced beyond the limitations period, which was to be calculated from the first permit denial. *Id.* at 45, 145 *A.*2d 1.

Observing that the Schacks had refrained from challenging the decision in order to pursue administrative remedies, we commented that *"the rule was aimed at those who slumber on their rights,* and, clearly, one who diligently pursues an administrative appeal is not within that category." *Id.* at 49, 145 *A.*2d 1 (emphasis added). We thus permitted enlargement in the interest of justice, concluding that "strict adherence to timing requirements under these circumstances would only work inequities in individual instances and tend to stifle [salutary] efforts at negotiation before judicial relief is sought." *Id.* at 50, 145 *A.*2d 1.

In 1975, in *Brunetti v. New Milford, supra,* we again confronted the applicability of paragraph (c) in the context of a constitutional challenge to a rent control ordinance brought by owners of rental properties. 68 *N.J.* at 582, 350 *A.*2d 19. The ordinance had passed in November 1973 and was revised in September 1974. *Id.* at 582–84, 350 *A.*2d 19. It was only after the revision that landlords brought an action in lieu of prerogative writs, challenging both the original ordinance and the revision. *Id.* at 584, 350 *A.*2d 19. The trial court concluded that the proceeding involving the original ordinance was barred under *Rule* 4:69–6(a) because the limitations period had long expired. *Id.* at 584–85, 350 *A.*2d 19.

In *Brunetti,* we surveyed New Jersey case law decided under the precursor to *Rule* 4:69 and observed that "certain cases were excepted from the rule governing limitation of actions." *Id.* at 586, 350 *A.*2d 19. "Included" were three traditional types of

challenges: "important and novel constitutional questions"; "informal or *ex parte* determinations of legal questions by administrative officials"; and "important public rather than private interests which require adjudication or clarification." *Ibid.* Concluding that "the constitutional claims raised by plaintiffs in the instant case are at least as fundamental and important as those raised by appellants in the cases cited," we determined that the interest of justice warranted a relaxation of the time limit imposed by *Rule* 4:69–6. *Id.* at 587, 350 *A.*2d 19.

In 1988, in *Reilly,* we addressed "the measure of discretion vested in courts under *Rule* 4:69–6(c) to enlarge the ordinarily applicable forty-five day limitation within which courts may review certain actions of municipal governing bodies." *Reilly, supra,* 109 *N.J.* at 557, 538 *A.*2d 362. There, the challenge to the council's ratification of a four-year $20,000 municipal consulting contract was not brought until five months after it occurred. *Ibid.* The trial court concluded that the action was out of time under *Rule* 4:69–6(a), and the Appellate Division affirmed. *Id.* at 557–58, 538 *A.*2d 362.

Reviewing the refusal of the lower courts to enlarge the *Rule* 4:69–6 limitations period, we relied on *Brunetti, supra,* for the observation that "one of the well-recognized exceptions warranting relief from the statute of limitations is based on consideration of public rather than private interests." *Reilly, supra,* 109 *N.J.* at 558, 538 *A.*2d 362. We also commented that the presence of a public interest was not the only consideration; rather, public interest must be balanced against "the important policy of repose expressed in the forty-five day rule." *Id.* at 559, 538 *A.*2d 362. As a general proposition, in *Reilly* we recognized that "ignorance of the existence of a cause of action will not prevent the running of a period of limitations except when there has been concealment." *Ibid.* Importantly, the concealment need not be intentional or malicious, as evidenced by the fact that in *Reilly* we attributed the blame for the lateness of that proceeding to the negligence of the municipality: "On this aspect of the case, we note that much of the

municipality's grievance about the lateness of the action might have been avoided had the descriptions of the proposed public action been more specific" on the agenda of the meeting that was published. *Id.* at 559–60, 538 *A.*2d 362. In *Reilly,* we were "satisfied that this factual setting properly calls for an exercise of judicial discretion to enlarge the time to review the action." *Ibid.* In so holding, we rejected the lower court's conclusion that it was constrained by the parameters of the rule to conclude that the complaint was out of time. *Id.* at 560, 538 *A.*2d 362.

Our most recent foray into the issue of the satisfaction of the enlargement provision came in 2001 in *Borough of Princeton v. Bd. of Chosen Freeholders,* 169 *N.J.* 135, 777 *A.*2d 19 (2001). That case presented a challenge to long-term waste management contracts awarded without public bidding. *Id.* at 141, 777 *A.*2d 19. The actions were brought nine years and five years after the contracts were entered. *Id.* at 152, 777 *A.*2d 19. The defendants moved for summary judgment, but the plaintiffs argued that, in the interest of justice, the *Rule* 4:69–6 time limitations should be enlarged. *Ibid.* The trial court granted summary judgment and the Appellate Division reversed, declaring the action not barred on timeliness grounds. *Id.* at 148–49, 777 *A.*2d 19.

In affirming the Appellate Division, we noted that the waste management contracts were long-term in nature, and, if improper, constituted "a continuing violation of public rights," *id.* at 154, 777 *A.*2d 19 (quoting *Reilly, supra,* 109 *N.J.* at 559, 538 *A.*2d 362). We also declared that waste management issues present "unique public policy concerns." *Borough of Princeton, supra,* 169 *N.J.* at 155, 777 *A.*2d 19. For those reasons, we enlarged the limitations period notwithstanding the defendants' asserted interest in repose. *Id.* at 156, 777 *A.*2d 19. Even though the defendants had been operating under the contracts for several years, we concluded:

the potential prejudice to the public that would result from not reaching the merits in these petitions to outweigh any prejudice that defendants might suffer by our disposition. As the Appellate Division noted below, considerations of fairness can be appropriately considered during the process of crafting a remedy, should that

prove necessary, rather than serve to bar examination of the underlying issue completely.
[*Ibid.* (internal quotation marks omitted).]

*Cohen v. Thoft, supra,* is also important to our analysis. There, the Appellate Division confronted an action in lieu of prerogative writs commenced three days beyond the forty-five-day timeframe imposed by *Rule* 4:69–6(b)(3). 368 *N.J.Super.* at 340, 845 *A.*2d 1281. The defendants had obtained a variance to expand their home on July 25, 2002, over the objection of the plaintiff and others. *Ibid.* The next day, July 26, 2002, the defendants published a notice in *The Trenton Times,* unbeknownst to the zoning officer who sent defendants a letter on August 5, 2002, indicating his own intent to publish the notice on August 9, 2002. *Id.* at 340–41, 845 *A.*2d 1281. The defendants did not respond to that letter and the zoning officer published the notice in *The Princeton Packet* as planned, later informing the plaintiff by telephone that publication had occurred on August 9, 2002. *Id.* at 341, 845 *A.*2d 1281. The plaintiff filed an action in lieu of prerogative writs on September 12, 2002, within the forty-five-day deadline created by the borough's publication of the resolution, but forty-eight days after the defendants had published. *Ibid.* The defendants moved for dismissal due to the violation of the limitations period imposed by *Rule* 4:69–6(b)(3). *Ibid.* In opposition to that motion, the plaintiff submitted a certification stating (a) that he had been in contact with the board officials and had been told the notice would be published on August 9, 2002; (b) that neither he nor the zoning officer had any prior knowledge that publication had taken place; and (c) that he only discovered on September 9, 2002, that the defendants had published a notice on July 26, 2002. *Id.* at 341–42, 845 *A.*2d 1281.

The trial court dismissed the case, strictly applying both the deadlines imposed by *Rule* 4:69–6(b)(3) and the three categories of exceptions (constitutional questions, ex parte determinations, and important public interests) enunciated in *Brunetti. Id.* at 342, 845 *A.*2d 1281. It concluded that the defendants' publication had triggered the calculation of the limitations period, and that the

plaintiff had been aware that the resolution had passed and should have been on notice that publication would be forthcoming. *Ibid.*

The Appellate Division, rejecting the trial court's conclusion that the *Brunetti* exceptions constitute an exhaustive list of circumstances pursuant to which enlargement can be awarded, pointed out that the *Brunetti* list had merely *"included"* some traditional exceptions. *Id.* at 345, 845 *A.*2d 1281 (quoting *Brunetti, supra,* 68 *N.J.* at 586, 350 *A.*2d 19). Writing for the panel, Judge Skillman properly noted that "neither the Supreme Court nor this court has ever held that a party seeking an enlargement of time under *Rule* 4:69–6(c) must show that a case falls within one of those categories." *Id.* at 346, 845 *A.*2d 1281. "Therefore, the trial court erred in concluding that plaintiff was not entitled to an enlargement of time because his case did not fall within any of those categories." *Id.* at 346–47, 845 *A.*2d 1281.

Instead, the Appellate Division looked at the evidence presented during the motion to dismiss—the recounting of the conversation between the zoning officer and the plaintiff concerning the date of publication, and the plaintiff's subsequent verification of that date by locating the notice in the newspaper. *Id.* at 347, 845 *A.*2d 1281. The panel concluded that the plaintiff had not slumbered on his rights, "but instead reasonably relied on his communications with [the borough official] in assuming that the August 9, 2002 notice ... was the official notice that triggered the forty-five day period for challenging the variance approval." *Ibid.* The panel also found no prejudice in the three-day delay, and directed that the case be remanded to the trial court because "it would be a miscarriage of justice to deprive plaintiff of a hearing on the merits of his challenge...." *Ibid.*

## VI.

*Cohen v. Thoft* is the paradigm for this case. *Brunetti* was never intended to limit the categories of exceptions to *Rule* 4:69 to the three cited therein. *Id.* at 345–47, 845 *A.*2d 1281. Indeed, the use of the word "include" by Justice Pashman in *Brunetti* is a

clear indicator that our list of exceptions was not intended to be exhaustive. Indeed, the broad language of the enlargement provision belies the suggestion that the intent of the rule is to restrict enlargement to one of those three categories. *See R.* 4:69–6(c) (brooking no limitation as to circumstances that may require enlargement in interests of justice). Like the trial court in *Cohen v. Thoft, supra,* the trial court in this case was mistaken when it improperly construed *Brunetti's* language as imposing a strict "three-part standard" that must be met for enlargement to be awarded.

Here, the Appellate Division recognized that error by acknowledging that there may be circumstances that warrant an enlargement of time other than the traditional categories. However, the panel itself went astray in concluding that *Cohen v. Thoft* requires a willful concealment in order to justify the extension. Nothing in *Cohen v. Thoft* supports that view. Rather, *Cohen v. Thoft* is aligned with our own decision in *Reilly* that recognized municipal negligence as a basis for invoking *Rule* 4:69. *Reilly, supra,* 109 *N.J.* at 557, 538 *A.*2d 362.

This case is essentially on all fours with *Cohen v. Thoft.* There, the defendants published a notice on July 26, 2002, without notifying the zoning officer who published his own notice on August 9, 2002, and later informed the plaintiff of that publication date. *Cohen, supra,* 368 *N.J.Super.* at 340–41, 845 *A.*2d 1281. As a result, the plaintiff filed outside the forty-five-day window provided by the defendants' original notice. *Id.* at 341, 845 *A.*2d 1281. The Appellate Division held that that communication snafu on which the plaintiff relied was sufficient to trigger the salutary provisions of *Rule* 4:69 and that the three-day delay did not prejudice the defendants. *Id.* at 347, 845 *A.*2d 1281.

The same is true here. Plaintiff was entirely reasonable in calling the Board Secretary for information. Unlike defendants, we do not view that action as a punishable shortcut. Rather, it was a logical and sensible approach. In response, Kiernan–O'Toole inadvertently misled plaintiff regarding the date from

which the forty-five-day limit had to be calculated. To be sure, BPG was blameless, but so was plaintiff, which cannot be said to have slumbered on its rights. Further, the six-day delay was such that defendants could not have suffered prejudice sufficient to warrant the barring of this litigation. Indeed, this is the exact constellation of circumstances that *Rule* 4:69 was intended to address. We therefore reverse the judgment of the Appellate Division and remand the matter to the trial court for the reinstatement of plaintiff's complaint.

## VII.

The judgment of the Appellate Division is reversed. The matter is remanded for further proceedings consistent with the principles to which we have adverted.

Justice RIVERA–SOTO, dissenting.

Substantively, the Court today allows a tardy complaint in lieu of prerogative writs that was rejected by both the trial court and the Appellate Division. Those courts properly rejected that complaint because the Legislature explicitly has set forth the trigger for such a filing, *N.J.S.A.* 40:55D–10(i) ("The period of time in which an appeal of the decision [of a municipal agency] may be made shall run *from the first publication* of the decision, *whether arranged by the municipality or the applicant* [,] " (emphasis supplied)), a statutory "bright line" provision that is given far too insufficient weight by the Court. That legislative mandate is clear, and the reasoning and conclusions of the trial court and the Appellate Division are unassailable.[1] For those reasons, I respectfully dissent. I add, however, the following.

---

[1] Admittedly, plaintiff has raised a seemingly equitable argument of reliance on what allegedly was stated to it by a municipal employee. That said, the wisdom of permitting challenges to court actions based on an unrecorded telephone call with a municipal staff person, the contents of which are sharply in dispute, is fundamentally suspect. The obligation of timely filing remains squarely on the filer; that obligation never should be shifted to governmental employees who

In my opinion in *Henry v. New Jersey Department of Human Services*, 204 *N.J.* 320, 354, 9 *A.*3d 882 (2010) (Rivera–Soto, J., abstaining), I set forth the view that the Court, presently "constituted as one Chief Justice, five Associate Justices and a Judge of the Appellate Division selected unilaterally by the Chief Justice, ... is unconstitutional and its acts are ultra vires[.]" *Ibid.* I added that, as a result, "I will continue to abstain from all decisions of this Court for so long as it remains unconstitutionally constituted." *Id.* at 372, 9 *A.*3d 882.

Among the varied reactions to *Henry*, a particularly sober, thoughtful, measured and ultimately persuasive analysis stands out, a voice that has triggered additional reflection on the course I earlier charted. Although it does not modify my earlier conclusion concerning the unconstitutionality of the Court's present composition, that analysis has resulted in a more nuanced view of the intersection between the Chief Justice's exhortation that my "considered views as a voting Justice are worthy of consideration by fellow members of this Court and the litigants who appear before it" and that I "should fully participate in this matter and all others presented for the Court's review[,]" *Johnson v. Johnson,* 204 *N.J.* 529, 553, 9 *A.*3d 1003 (2010) (Rabner, C.J., concurring), and the core constitutional infirmity attendant to the temporary appointment of a Superior Court judge to the Supreme Court when not necessary for a quorum, as highlighted by Justice Hoens

---

despite best efforts unwittingly may provide incorrect or, as plaintiff claims here, incomplete information. That is where the simple beauty of requiring that litigants operate from and be guided by the *written* word lies, and it should remain our guidepost.

Likewise, "[a] basic equitable maxim is that 'he who seeks equity must do equity.'" *Thompson v. City of Atlantic City*, 190 *N.J.* 359, 384, 921 *A.*2d 427 (2007) (quoting *Ryan v. Motor Credit Co.*, 132 *N.J. Eq.* 398, 401, 28 *A.*2d 181 (E. & A.1942)). Here, plaintiff would have been fully informed if it had exercised the obvious due diligence of contacting *both* entities the statute explicitly allows to publish a notice and, hence, start the running of the challenge period: both the municipality *and* the applicant. Having assumed the risk of contacting only one of the permitted publishers, plaintiff should not be heard to complain of the consequences of its own failure to act.

in *Henry, supra,* 204 *N.J.* at 528–29, 9 *A.*3d 882 (Hoens, J., *dubitante* ).  This process has revealed a previously unconsidered, but nevertheless reasoned and measured alternative approach, one that minimizes the jurisprudential uproar a blanket abstention might create but that also maintains the intellectual and constitutional integrity that undergirds my earlier abstaining opinion.

The result of that process is that I will cast a substantive vote in every case in which the judge of the Superior Court temporarily assigned to serve on the Supreme Court participates except for those in which the temporarily assigned judge casts a vote that affects the outcome of the case.  In those latter cases as described in Justice Hoens's *dubitante* opinion—that is, the cases in which the judge of the Superior Court temporarily assigned to serve on the Supreme Court casts a vote that affects the outcome of the case—I shall defer a decision on casting a vote and reserve the right to abstain for the reasons noted in *Henry, supra.*  By approaching the Court's work in that more directed, pinpointed fashion, a reasoned dialogue on the constitutionality of the temporary assignment process can focus on the substance of the message expressed in *Henry.*

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, HOENS and STERN—6.

*For dissent*—Justice RIVERA–SOTO—1.