NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0870-13T3

COMMITTEE OF PETITIONERS FOR
THE REPEAL OF ORDINANCE NUMBER
522 (2013) OF THE BOROUGH OF
WEST WILDWOOD,

    Plaintiff-Respondent,

v.

DONNA L. FREDERICK, ACTING
MUNICIPAL CLERK OF THE BOROUGH
OF WEST WILDWOOD, and THE BOROUGH
OF WEST WILDWOOD,

    Defendants-Appellants.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| May 15, 2014 |
| APPELLATE DIVISION |

Argued March 19, 2014 - Decided May 15, 2014

Before Judges Sapp-Peterson, Lihotz and Maven.[1]

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Docket No. L-338-13.

Andrew J. Cafiero argued the cause for appellants (Cafiero and Balliette, attorneys; Mr. Cafiero and William J. Kaufmann, on the brief).

Paul J. Baldini argued the cause for respondent.

The opinion of the court was delivered by

LIHOTZ, J.A.D.

_____

[1] Judge Maven did not participate in oral argument.  She joins the opinion with counsel's consent.  R. 2:13-2(b)

In May 2013, defendant the Borough of West Wildwood (Borough) passed an ordinance authorizing the issuance of bonds to finance various capital improvements. Following publication of the ordinance, plaintiff, the Committee of Petitioners for the Repeal of Ordinance No. 522 (2013) of the Borough of West Wildwood, sought repeal of the ordinance via referendum. Petitioning Borough voters, plaintiff procured sixty-two signatures and submitted the petition to defendant Donna L. Frederick, Acting Municipal Clerk of the Borough. Frederick rejected the petition, identifying specific notarial defects and explaining plaintiff failed to comply with the applicable statute, which mandated names and addresses of five committee members be affixed to the petition when circulated. Plaintiff resubmitted the petition after correcting the noted deficiencies; however, Frederick again returned the petition stating the corrections were insufficient to cure the defects.

Plaintiff filed a complaint in lieu of prerogative writs, demanding presentation of the referendum to voters in the November 2013 election. Following a hearing, Judge Julio L. Mendez entered judgment directing the Borough to place the question challenging the ordinance on the 2013 general election ballot. The Borough's request to stay the order was granted.

On appeal, Frederick and the Borough (collectively, defendants) challenge the Law Division's consideration of the

A-0870-13T3

plaintiff's complaint, arguing the protest was untimely. Alternatively, defendants challenge the judge's findings on two issues: first, that plaintiff was not required to affix the names and addresses of five members on the petition prior to its circulation; and second, that Frederick's rejection of the petition on the basis of notarial errors was arbitrary and capricious. We are not persuaded and affirm concluding a voter protest of a bond ordinance is governed by the procedures set forth in the Home Rule Act N.J.S.A. 40:49-27, which does not require listing the Committee of Petitioners found in the referendum provisions governing ordinance challenges, other than those for capital improvement indebtedness, in a municipality formed under the Walsh Act, N.J.S.A. 40:74-5.

I.

On May 3, 2013, the Borough introduced and passed Bond Ordinance No. 522 (2013) (ordinance). The ordinance authorized issuance of $470,250 in bonds to finance the cost of various capital improvements, including acquisition of a police sport utility vehicle, backhoe loader, street sweeper and skid steer; purchases for firefighters such as turn-out gear, flood valves, a hydric hose press, plasma cutter and repairs to the fire house; purchase of office equipment; purchase of computers, software, and technology equipment for the Police Department; purchase of office furniture for offices in Borough Hall;

replacement or upgrade of a fueling station; and acquisition of equipment for the Public Works Department.

The ordinance was published in The Press of Atlantic City on May 9, 2013. Thereafter, at a specially advertised May 20, 2013 public meeting, the Borough passed the ordinance on its second and final reading.

Plaintiff is comprised of five Borough registered voters: Anna M. Santora, Gerard P. McNamara, Frederick J. Schweikert, Herbert C. Frederick, and Anthony J. Santora. The petition expressed it was drawn in compliance with N.J.S.A. 40:74-5, and contained the names and addresses of four of the five members, omitting Anthony J. Santora.[2] Plaintiff's members circulated the petition seeking to repeal the ordinance or place a referendum before the voters in the upcoming election. Plaintiff gathered sixty-two resident signatures, which exceeded fifteen percent of the votes cast in the preceding general election.[3] Plaintiff then filed the notarized petition with Frederick on June 7, 2013.

---

[2]     Plaintiff actually submitted eight copies of the petition, each containing a varying number of voters' signatures. For convenience we refer to documents by using the singular, petition.

[3]     Enclosed with the petition was a statement from Cape May County reflecting the Borough's electorate cast two hundred and thirty-two votes in the prior general assembly election.

By letter dated June 15, 2013, Frederick rejected the petition, listing several deficiencies. First, she noted the petition was "defective because the petition d[id] not have the required number of Members of the Committee of Petitioners as per N.J.S.A. 40:74-5." Second, the notarized month on two of the forms was illegible. Third, one form reflected a notarized date of May 6, 2013, which was prior to the final adoption date of the ordinance. Frederick explained because "the [p]etition was fatally flawed from the onset, . . . [it would] not be forwarded to the Board of Commissioners pursuant to N.J.S.A. 40:74-5."

In response, plaintiff amended the petition. Anthony J. Santora's name was added below the names and addresses of the other four members. Also, the notary, who executed the original attestation, corrected the erroneous date, striking a line through the incorrect "May 6, 2013" and replacing it with "June 6, 2013," the date voters signed the petition. The notary also crossed out the illegible months and replaced them with "June," adding her initials to these changes. The amended petition was resubmitted on June 19, 2013.

Frederick found the amended petition defective and returned it to plaintiff on June 25, 2013. She explained the amended petition was merely the original petition, modified in a manner she found unacceptable because N.J.S.A. 40:74-5 required a

petition to identify five committee members prior to gathering voters' signatures. Frederick concluded the mere addition of the fifth petitioner, after voters had executed the petition, was insufficient. Further, Frederick took issue with the correction of the notarized dates, but did not explain the purported irregularity.

On July 19, 2013, plaintiff filed an order to show cause and a verified complaint in lieu of prerogative writs demanding "judgment against the Borough and . . . Frederick[,] compelling the suspension of [the ordinance] and presentation of said [o]rdinance to the voters" along with compensatory damages, punitive damages, attorney's fees and such other relief the court deemed just and appropriate. Judge Mendez presided over the evidentiary hearing held on the return date of the order to show cause. Frederick and Anthony J. Santora testified. Judge Mendez requested the parties submit briefs and scheduled the matter for final argument on September 27, 2013.

Despite the pending legal challenge to the petition's rejection, Elaine Crowley, the Borough's Acting Chief Financial Officer, prepared a "Certificate of Down Payment" and Frederick prepared a "Clerk's Certificate" attesting to the ordinance's adoption and the denial of plaintiff's protests. These forms were submitted to bond counsel. On July 26, 2013, the Borough secured and issued bond anticipation notes and Crowley executed

a "Certificate of Determination and Award," selling the notes to Oppenheimer & Company, Philadelphia. The same day, Oppenheimer wired funds to the Borough's savings account.

In a written opinion, Judge Mendez considered plaintiff's complaint. He first determined relaxation of the statutory twenty-day period to file a protest to an ordinance was necessary, in the interests of justice. Reviewing whether the petition was valid, Judge Mendez concluded the petition, as corrected, should have been accepted. He directed Frederick and the Cape May County Board of Elections to make necessary arrangements to place a referendum question on the November 2013 general election ballot. The judge memorialized his decision in a contemporaneous order filed October 3, 2013. Defendants' appeal followed. The order was stayed pending our review.

## II.

On appeal, defendants challenge the court's decision, arguing: plaintiff's protest of the ordinance was untimely and its complaint should have been dismissed; the trial judge failed to harmonize the referendum requirements of the Walsh Act and erroneously relied on the provisions of the Home Rule Act; and the court erred in finding Frederick's rejection of the petition was arbitrary and capricious.

As a general rule in non-jury actions, we reverse a trial court's conclusions that are based on factual findings so wholly unsupportable as to result in a denial of justice. Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 483-84 (1974). See also R. 1:7-4; Pressler & Verniero, Current N.J. Court Rules, comment 2 on R. 1:7-4 (2014). However, we afford no special deference to a trial judge's "interpretation of the law and the legal consequences that flow from established facts," Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995), which are subject to our plenary review. Dep't of Envtl. Prot. v. Kafil, 395 N.J. Super. 597, 601 (App. Div. 2007).

## A.

Determining the validity of a petition seeking referendum of the proposed bond ordinance, as well as a citizen's right to do so, requires review of statutes governing referenda. We will examine these statutory provisions below. Suffice it to say, each requires any request for referendum must be filed within twenty days from the date of publication, after final passage of the challenged ordinance. Further, Rule 4:69-6(b)(11), which governs actions in lieu of prerogative writs, (including any challenge to review a municipal resolution or ordinance authorizing the issuance of notes or bonds) requires a complaint be filed within twenty days from the date of the publication

following final passage of the ordinance. Upon the expiration of this twenty-day period, consideration of a challenge to a bond ordinance is generally barred. N.J.S.A. 40A:2-49.

Here, the second and final reading of the ordinance was held on May 20, 2013, with publication on May 23, 2013. Plaintiff filed its petition with Frederick fifteen days later. Frederick rejected the petition on June 15, 2013. The amended petition was resubmitted on June 19, 2013. It too was rejected and Frederick declared the ordinance operative, pursuant to N.J.S.A. 40:49-27(b), as of June 25, 2013, triggering commencement of the twenty-day period for protest. See R. 4:69-6(b)(11) (disallowing a complaint in lieu of prerogative writs to challenge a bond ordinance filed more than twenty days following publication after final passage). However, plaintiff's prerogative writs complaint was not filed until July 19, 2013.

The trial court determined the "interests of justice" required enlargement of the time period to challenge the ordinance, as permitted by Rule 4:69-6(c), because the referendum concerned "important legal questions of great public interest." Judge Mendez found it compelling that more than twenty-seven percent of the total voters participating in the last general election had executed the petition. Also, he found the Borough would not be unduly prejudiced as it was on notice

plaintiff intended to challenge the ordinance within the twenty-day period.  Moreover, the delay, in part, resulted from confusion regarding the propriety of procedural provisions relied upon by Frederick and competing authorities regulating correction of notarial errors.  Most important, Judge Mendez concluded the delay in filing was very brief and should not stand in the way of the voters' right to decide a critical financial issue.  Consequently, he concluded the complaint would not be time-barred and must be considered.

Defendants argue the judge erred because the twenty-day time bar must be strictly construed.  We reject this contention.  Such an interpretation would render inoperative the provisions of Rule 4:69-6(c), which specifically allows the expansion of the twenty-day period when the interests of justice require such a result.  See Schack v. Trimble, 28 N.J. 40, 48 (1958) (stating Rule 4:69-6(c) "is merely an attempt to restate in the form of a generalized standard, decisional exceptions which had already been engrafted upon the rule").

Relaxation depends on "considerations of fairness," Borough of Princeton v. Bd. of Chosen Freeholders of the Cnty. of Mercer, 169 N.J. 135, 156 (2001), after taking into account "all relevant equitable considerations under the circumstances."  Pressler & Verniero, supra, comment 7.3 on R. 4:69-6(c).  As Judge Mendez identified, "cases involving . . . important public

10

rather than private interests[,] which require adjudication or clarification" certainly provide the equitable considerations for such an exception. Brunetti v. New Milford, 68 N.J. 576, 586 (1975). See also Thornton v. Ridgewood, 17 N.J. 499, 511 (1955) (finding laches should not be applied to a taxpayer suing on behalf of a municipality to prevent alleged misuse of municipal funds, particularly where municipal contract at issue was executory at the time of suit); Newark Morning Ledger Co. v. N.J. Sports & Exposition Auth., 423 N.J. Super. 140, 158 (App. Div. 2011) (finding enlargement of forty-five-day statute of limitations under the Open Public Records Act, N.J.S.A. 47:1A-1 to -13, appropriate, "coincident with the provisions of Rule 4:69-6(c)").

Here, the delay was merely four days and plaintiff "cannot be said to have slumbered on its rights." Hopewell Valley Citizens' Group, Inc. v. Berwind Prop. Group Dev. Co., 204 N.J. 569, 585 (2011). Further, prejudice to the Borough was minimal or non-existent. Plaintiff expressed its "inten[t] to exercise [its] right to challenge [the] ordinance," by filing a petition of protest putting the Borough on notice. Indeed, plaintiff's complaint was filed before the bond sale was effectuated, stripping the Borough of a claim of reliance on the period of repose. See, e.g., Jersey City Educ. Assoc. v. City of Jersey City, 316 N.J. Super. 245, 251-52 (App. Div. 1998), certif.

denied, 158 N.J. 71 (1999) ("The approval of a municipal bond ordinance and the complexities of preparing for the sale of municipal bonds must have the benefit of the repose arising from a statutory time-bar on continued litigation.").

Finally, the matter raised an important public question of the mandated procedure for voters to exercise their rights to seek referendum and repeal of a significant expenditure of hard-earned taxpayer dollars, which would incur long-term indebtedness. Judge Mendez correctly considered all facts and circumstances, including the length of the delay, plaintiff's diligence, the urgency of the proposed bond expenditures and the right of voters in this "relatively small borough" "to have a say" in this government decision affecting "a relatively large and important portion of the [Borough's] budget[.]" See In re Petition for Referendum on City of Trenton Ordinance 09-02, 201 N.J. 349, 353 (2010) ("[Referenda] is an exercise in democracy that profoundly affects the relationship between the citizens and their government by affording the people the last word if they choose to take a stand against the wisdom of an ordinance that the government has enacted."); In re City of Margate City, 424 N.J. Super. 242, 251 (App. Div. 2012) ("A court should be especially reluctant to restrictively construe a statute that establishes a right to a public referendum regarding an ordinance authorizing the incurring of an indebtedness."). The

determination allowing consideration of plaintiff's complaint was not an abuse of discretion.

B.

"The New Jersey Constitution does not contain a referendum clause permitting voters to directly challenge state or municipal legislative enactments." In re Ordinance 04-75, 192 N.J. 446, 459 n.7 (2007). A voter's right to do so is statutory. The controversy at hand examines the provisions of two statutes, which defendants identify as containing a perceived incongruity in the procedural requirements necessary for presentation of referendum to voters. Suggesting this is "an issue of first impression," defendants assert the trial court erred by failing to harmonize N.J.S.A. 40:74-5 of the Walsh Act and N.J.S.A. 40:49-27 of the Home Rule Act. To provide necessary context, we first detail the statutory provisions.

The Borough is incorporated under the Commission Form of Government Law, more commonly known as the Walsh Act, N.J.S.A. 40:70-1 to 40:76-27. Under the Walsh Act citizens can challenge an ordinance requesting its repeal or seeking a referendum, as follows:

> If within 20 days after the final passage of
> an ordinance, except . . . ordinances
> authorizing an improvement or the incurring
> of an indebtedness, . . . a petition signed
> by electors of the municipality equal in

number to at least 15% of the entire vote cast at the last preceding general election at which members of the General Assembly were elected protesting against the passage of such ordinance, be presented to the board, it shall thereupon be suspended from going into operation and the board of commissioners shall reconsider the ordinance within 20 days of the presentation of the petition to the board. If the ordinance is not entirely repealed, the board shall submit it . . . to the vote of the electors of the municipality. . . . An ordinance so submitted shall not become operative unless a majority of the qualified electors voting on the ordinance shall vote in favor thereof.

The names and addresses of five voters, designated as the Committee of the Petitioners, shall be included in the petition.

[N.J.S.A. 40:74-5.]

Also implicated in this appeal are provisions of the Home Rule Act. "The Home Rule Act, which applies to every municipality in the State regardless of the form of government under which it operates, was enacted in 1917. L. 1917, c. 152." Margate City, supra, 424 N.J. Super. at 245. The Home Rule Act establishes a right to a public referendum regarding any ordinance authorizing the incurring of indebtedness. N.J.S.A. 40:49-27.[4] This provision states in pertinent part:

---

[4] We further note N.J.S.A. 40:49-9 addresses a right to a public referendum with respect to any ordinance authorizing improvements.

> Any ordinance authorizing the incurring of any indebtedness, except for current expenses, shall become operative 20 days after the publication thereof after its final passage, unless within those 20 days a protest against the incurring of such indebtedness shall be filed in the office of the municipal clerk, by a petition signed by registered voters of the municipality equal in number to at least 15% of the number of votes cast in the municipality at the most recent general election at which members of the General Assembly were elected, in which case such ordinance shall remain inoperative until a proposition for the ratification thereof shall be adopted, at an election to be held for that purpose, by a majority of the qualified voters of the municipality voting on the proposition[.]
>
> [Ibid.]

As set forth above, plaintiff's petition identified it was prepared pursuant to N.J.S.A. 40:74-5 of the Walsh Act; however, the original document included only four names and addresses of voters, "designated as the Committee of the Petitioners," rather than the statute's compulsory five. Judge Mendez determined the designation of five members was unnecessary because the protest challenged an ordinance authorizing capital improvement indebtedness, a subject specifically excluded by challenges pursuant to N.J.S.A. 40:74-5 of the Walsh Act. In addition, he relied on N.J.S.A. 40:49-27 of the Home Rule Act, which contains no requirement to identify the petitioners who are rallying a protest of a municipal indebtedness ordinance.

Defendants argue Judge Mendez erred in concluding a petition for referendum of an indebtedness ordinance was governed solely by the Home Rule Act, with no Committee of Petitioners requirement. They assert the referendum provisions of the Walsh Act and the Home Rule Act must be read in pari materia, such that a petition for referendum under the Home Rule Act must also comply with the Committee of Petitioners requirement in N.J.S.A. 40:74-5 when submitted to the Clerk of a Walsh Act municipality. We are not persuaded.

The "overriding objective in determining the meaning of a statute is to 'effectuate the legislative intent in light of the language used and the objects sought to be achieved.'" McCann v. Clerk of Jersey City, 167 N.J. 311, 320 (2001) (quoting State v. Hoffman, 149 N.J. 564, 578 (1997)). "It is a cardinal rule of statutory construction that full effect should be given, if possible, to every word of a statute." Id. at 321 (internal quotation marks and citation omitted). While statutory language "'is the surest indicator of the Legislature's intent[,]'" Lipkowitz v. Hamilton Surgery Ctr., LLC, 415 N.J. Super. 29, 35 (App. Div. 2010) (quoting Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 231 (1998)), it is also incumbent that we "harmonize the individual sections and read the statute in the way that is most consistent with the overall legislative intent." Fiore v. Consol. Freightways, 140 N.J. 452, 466 (1995).

Importantly, "[t]he referendum provision in the Home Rule Act is . . . useful and important, and [the courts] have an obligation to promote, where appropriate, its beneficial effects." Retz v. Saddle Brook, 69 N.J. 563, 571 (1976). In the context presented here,

> [a] court should be especially reluctant to restrictively construe a statute that establishes a right to a public referendum regarding an ordinance authorizing the incurring of an indebtedness. The New Jersey Constitution recognizes that there is a particularly strong need for public participation, in the form of a referendum, in a legislative decision to incur indebtedness.
>
> [Margate City, supra, 424 N.J. Super. at 251.]

This court recently examined whether the Home Rule Act applied to a Walsh Act municipality when voters filed a petition for a public referendum challenging an ordinance authorizing municipal indebtedness. See Margate City, supra, 424 N.J. Super. at 246. In Margate City, we examined both statutes and determined the referendum provision of the Walsh Act, N.J.S.A. 40:74-5, specifically excludes "ordinances authorizing an improvement or the incurring of an indebtedness," while the Home Rule Act, N.J.S.A. 40:49-27, is directed to repealing "any ordinance authorizing the incurring of an indebtedness." Margate City, supra, 424 N.J. Super. at 246-48. We rejected the trial court's restrictive reading of N.J.S.A. 40:74-5, as

17

prohibiting citizens in a Walsh Act community from exercising the right to petition for repeal of indebtedness ordinances. Id. at 248. We concluded the Walsh Act provision, N.J.S.A. 40:74-5, as now constituted, was intended to codify the Supreme Court's holding in Wethling v. Bd. of Comm'rs of the City of Orange, 94 N.J.L. 36 (Sup. Ct. 1920), and the Home Rule Act applied to Walsh Act communities. Margate City, supra, 424 N.J. Super. at 248. In doing so, we concluded Wethling's holding remained unchanged: a referendum on an ordinance authorizing the incurring of indebtedness is governed by the Home Rule Act, N.J.S.A. 40:49-27. Id. at 246, 248 (citing Wethling, supra, 94 N.J.L. at 38-39). We held:

> the evident intent of the 1937 revision [to N.J.S.A. 40:74-5] was to preserve the applicability of the Home Rule Act requirements for obtaining a referendum regarding an ordinance authorizing the incurring of an indebtedness rather than to completely abolish the right of [Walsh Act] municipal residents to petition for a public referendum regarding such ordinances.
>
> [Id. at 250.]

Although Margate City did not specifically examine the procedural Committee of Petitioners requirement at issue here, this court concluded the Legislature was aware of the statutes it adopted and well-understood the provisions for referendum in the two statutes were not identical. Id. at 246-50.

Here, Judge Mendez closely examined the language of the Home Rule Act and rejected defendants' argument that the omission of the Committee of Petitioners requirement was a mere legislative oversight. Contrary to defendants' suggestion, we find no error in Judge Mendez's conclusion that the statutory distinctions were purposeful.

The Home Rule Act is restricted to indebtedness challenges and includes precise procedures particularly suited to the type of bond ordinance being protested. The Home Rule Act favors taxpayers, because they must bear the financial burden of bond ordinances long after the municipal officials who agreed to incur debt have departed public office. As noted by Judge Mendez, if the Legislature intended to add the Committee of Petitioners requirement to the Home Rule Act referendum procedures added in 1986, it could have done so.

It is firmly established that "'[t]he Legislature is presumed to know the law.'" David v. Gov't Emps. Ins. Co., 360 N.J. Super. 127, 143 (App. Div.), certif. denied, 178 N.J. 251 (2003). Certainly, the Legislature is conversant with its own enactments, particularly when a statute is considered for amendment. Therefore, the Home Rule Act's absence of a requirement to identify a five-member Committee of Petitioners when protesting a bond ordinance was not an accident or an oversight. To the contrary, the Home Rule Act's exclusion of

the Committee of Petitioners requirement for a public referendum challenging a municipality's decision to incur long-term debt was decisive and in keeping with "the public policy favoring voter participation in a legislative decision to incur indebtedness." Margate City, supra, 424 N.J. Super. at 251. Indeed, this view aligns with the State Constitution's recognition of a "strong need for public participation, in the form of a referendum, in a legislative decision to incur indebtedness." Ibid. See also N.J. Const. art. 8, § 2, ¶ 3 (setting forth the Debt Limitation Clause, which provides any statute authorizing state indebtedness "shall [not] take effect until it has been submitted to the people at a general election and approved by a majority of the legally qualified voters of the State voting thereon").

Following our review of the relevant provisions of the Walsh Act and the Home Rule Act, we conclude the referendum procedures contained in the Home Rule Act, governing challenges to indebtedness ordinances do not require listing petitioners. Therefore, we reject defendants' challenge essentially for the reasons set forth in Judge Mendez's written opinion.

Having determined plaintiff fulfilled the requirements of N.J.S.A. 40:49-27(a) to -27(c), the petition should have been accepted. Further, the ordinance should have remained

inoperative until ratified or repealed at the next general election. N.J.S.A. 40:49-27.

## C.

Defendants' last argument seeks reversal of the finding that Frederick arbitrarily and capriciously rejected plaintiff's petition for notarial defects. Although Frederick properly identified the notary errors in the petition as originally submitted and informed plaintiff of the deficiencies, she did not inform plaintiffs how to address the defects. In particular, Frederick did not instruct plaintiffs that the corrections required execution of a new notarial act affixed on a newly prepared document. She did not explain plaintiff would again need to acquire signatures from voters supporting the petition. Further, Frederick's subsequent rejection of the corrected petition also made no mention of the basis of her objection to the notary's corrections, exhibiting an unreasonable exercise of her discretional authority. See D'Ascensio v. Benjamin, 142 N.J. Super. 52, 55 (App. Div.) ("In the absence of such statutory direction, a clerk has the discretionary power to adopt any rational means of performing his [or her] duty, subject to judicial review to determine whether he [or she] has abused his [or her] discretion and acted in an arbitrary manner."), certif. denied, 71 N.J. 526 (1976).

Defendants argue Frederick reasonably supported her decision to reject the petition by relying on a provision of the New Jersey Notary Handbook, Chapter 8—Prohibited Acts and Penalties, which states in pertinent part:

> The New Jersey Notary Section lists these prohibitions for notaries:
>
> 1.  You may not pre-date a notarial certificate to a date earlier than the date on which the corresponding document was executed.
>
>     . . . .
>
> 13. A notary should not amend a notarial certificate after the notarization is complete. If the notary fails to complete the notarial certificate with all the elements required by law while the person is present, the certificate should not be changed later. Instead, a new notarial act with a new notarial certificate is necessary.[5]

Plaintiff, on the other hand, identified information supplied by the National Notary Association stating that when a notary errs in "completing certificate wording, the best way to correct the error is to line through the mistake, write in the correct information, and initial and date the correction so that anyone

---

[5] New Jersey Notary Handbook (Am. Soc'y of Notaries, 11th ed. 1999-2012).

receiving the document knows who corrected the certificate and when."[6]

Judge Mendez found fault with Frederick's handling of this issue stating, "if a clerk desires an amendment to comply with a specific guidance manual to the exclusion of other guidance materials, she or he must communicate this desire to the voters at the time of rejection."  We agree.

Contrary to defendants' assertions, Frederick did not provide plaintiff guidance or direction on how and why she believed correction of the identified deficiencies should be achieved.  She merely noted the defects without further comment. In rejecting the corrected petition, Frederick provided no specificity as to the problem with the notarial amendments; she summarily explained that "the subsequent correcting of the notarized dates by the notary [was] also flawed."  Frederick's unexplained rejection was an arbitrary and capricious exercise of her authority, which impeded the Borough voters from exercising a fundamental right of participation in their governance.  After all, "the 'right of referendum' should be liberally construed to further 'the legislative policy of

---

[6]  Notary Bulletin, Nat'l Notary Ass'n, http://www. national notary.org/bulletin/best_practices/quiz_answers/corrections.html (June 1, 2011).

encouraging citizen interest and participation in local government.'"  In re Ordinance 04-75, supra, 192 N.J. at 455 (quoting Menendez v. City of Union City, 211 N.J. Super. 169, 172 (App. Div. 1986)).

Following our review, we affirm the October 3, 2013 order substantially for the reasons set forth by Judge Mendez in his written opinion.  R. 2:11-3(e)(1)(A).  The imposed stay of the order is vacated.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0870-13T3