**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-1564-23
                A-3880-23

THE GALAXY TOWERS
CONDOMINIUM
ASSOCIATION, INC.,

      Plaintiff-Appellant,

v.

TOWN OF GUTTENBERG,

      Defendant-Respondent.

_____

THE GALAXY TOWERS
CONDOMINIUM
ASSOCIATION, INC.,

      Plaintiff-Appellant,

v.

TOWN OF GUTTENBERG
PLANNING BOARD and
MAY GUTTENBERG, LLC,

      Defendants-Respondents.

_____

Submitted December 2, 2025 – Decided April 9, 2026

Before Judges Gooden Brown and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket Nos. L-1138-23 and L-1889-23.

Beattie Padovano, LLC, attorneys for appellant (John J. Lamb and Arthur M. Neiss, of counsel and on the briefs).

Waters, McPherson, McNeill, PC, attorneys for respondents Town of Guttenberg and Town of Guttenberg Planning Board (Eric D. McCullough, of counsel and on the briefs).

Gibbons PC, attorneys for respondent May Guttenberg, LLC (Cameron W. MacLeod, of counsel and on the brief).

PER CURIAM

Plaintiff Galaxy Towers Condominium Association, which manages property associated with 1,076 condominiums in the Town of Guttenberg (the Town), appeals from two December 20, 2023 Law Division orders granting the Town summary judgment, denying plaintiff's cross-motion for summary judgment, and dismissing with prejudice plaintiff's prerogative writs complaint challenging Ordinance 32-16 (the R-5 ordinance). Separately, plaintiff also appeals from the July 12, 2024 order upholding Guttenberg Planning Board's

2

(Board's) grant of site plan approval to defendant May Guttenberg, LLC (May Guttenberg) for a construction project enabled by the R-5 ordinance.

We consolidate the appeals for purposes of issuing a single opinion. For the reasons that follow, we reverse the December 20, 2023 orders in A-1564-23 and invalidate the R-5 ordinance. We reverse the July 12, 2024 order in A-3880-23 because invalidating the R-5 ordinance renders the site plan approval void.

I.

A. <u>A-1564-23</u>

By way of background, on June 15, 2009, the Board adopted a master plan update reexamination report and land use plan element amendment (the reexamination report), providing that pursuant to the 2003 master plan, the town intended to identify appropriate areas of the town for "mixed[-]use, mid-rise residential and high-rise residential uses." The reexamination report also stated that "allowing greater building height" would "promote appropriate growth and increas[e] the tax base."

The reexamination report discussed "J.F. Kennedy Boulevard East"[1] (Boulevard East), the street where plaintiff's property and May Guttenberg's proposed project were located, as follows:

> Boulevard East is a rather heavily traveled road that connects a number of municipalities in northern Hudson County. The entire east side of this street within Guttenberg is already utilized for high-rise residential development. However, the west side of Boulevard East between 68th and 71st Streets has potential for additional development. There is an existing nine-story building on the north side of 68th Street. An [eleven]-story building is located on a lot bordered by Boulevard East, 70th Street and Bellevue Avenue. But the remaining buildings along this stretch of road are two to three stories in height, with existing uses including commercial, residential and a nursing home. There are some existing sizable lots in the area as well, including on the blocks to the west of Bellevue Avenue.

The west side of Boulevard East, south of 71st Street, was identified in the reexamination report as an area "recommended for rezoning to permit increased building heights." The recommended building height was between ten and fifteen stories, with parking included to attract developers. The taller buildings would only be erected on larger lots of at least 20,000 square feet. The

---

[1] Officially known as John F. Kennedy Boulevard East, and sometimes referred to as JFK Boulevard East.

A-1564-23

maximum building height recommended was fifteen stories and 160 feet.[2] The reexamination report also provided bulk regulations for lots less than 20,000 square feet and greater than 20,000 square feet.

On November 28, 2016, more than seven years after the reexamination report was adopted, the Town Council first introduced the R-5 ordinance. The Town published the following initial notice of the R-5 ordinance in the Star Ledger on December 6, 2016:

> STATEMENT OF PURPOSE OF ORDINANCE
> The [R-5] [o]rdinance [i]mplements certain of the recommendations set forth [i]n the reexamination report entitled: "Master Plan Update Reexamination Report and Land Use Plan Element Amendment" prepared by Phillips Preiss Shapiro Associates, Inc. which was adopted on June 15, 2009. The [R-5] [o]rdinance modifies some of the regulations for the existing R-4 Mid-Rise Mixed Use zone,[3] creates the R-5 High-Rise Residential Use Zone, along with associated regulations, modifies the regulations for the existing Commercial Zone, amends the standards applicable to Particular Conditional Uses, and provides revised off-street parking regulations. The [R-5] [o]rdinance also amends the official Zoning Map of the

---

[2] The R-5 ordinance later implemented a maximum of 180 feet.

[3] On March 1, 2010, the Town had passed Ordinance 05-10 which created the R-4 mid-rise mixed-use district (the R-4 ordinance). The R-4 ordinance permitted a maximum building height of fifteen stories in the R-4 zone and implemented recommendations in the reexamination report. The R-5 ordinance subsequently limited the maximum building height of the R-4 district to five stories.

Town of Guttenberg pursuant to N.J.S.A. 40:55D-32 of the Municipal Land Use Law, to change the zoning designation of certain properties to the R-5 Zone as set forth therein. A copy of the full [o]rdinance is available to any member of the public at the Town Clerk's Office, 6808 Park Avenue, Guttenberg, New Jersey.

The R-5 ordinance was passed upon its second reading on December 19, 2016. Final publication of the R-5 ordinance appeared in the Star Ledger on December 27, 2016, stating:

The foregoing ordinance was [i]ntroduced at a [r]egular [m]eeting of the Governing Body of the Town of Guttenberg held on November 28, 2016 and was read for the first time. This ordinance was read for a second time and was voted upon and adopted at a regular meeting held on December 19, 2016. [A] [c]opy of this ordinance is posted on the bulletin board in the [m]unicipal [b]uilding. ORDINANCE[ ]#32-16 AN ORDINANCE TO AMEND AND SUPPLEMENT CHAPTER XXVIII, "ZONING," OF THE REVISED GENERAL ORDINANCES OF THE TOWN OF GUTTENBERG WHEREAS, the Town of Guttenberg Joint Planning/Zoning Board (the "Board") undertook a reexamination of the Master Plan pursuant to N.J.S.A. 40:55D-89 of the Municipal Land Use Law and [i]ssued a reexamination report entitled: "Master Plan Update Reexamination Report and Land Use Plan Element Amendment" prepared by Phillips Preiss Shapiro Associates, Inc. which was adopted on June 15, 2009[,] . . . WHEREAS, the Town of Guttenberg also wishes to amend the official Zoning Map of the Town of Guttenberg, pursuant to N.J.S.A. 40:55D-32 of the Municipal Land Use Law, to change the zoning designation of certain properties as set forth herein. Any [o]rdinance or [o]rdinances in conflict with the

6

provision of these [o]rdinances are repealed to the extent of such conflict. These [o]rdinances shall become effective [i]mmediately upon final adoption and publication thereof according to law.

The R-5 ordinance created a new high-rise residential use district known as R-5. Sixty-seven properties formerly in the R-4 district became part of the new R-5 district. In the R-5 ordinance, a high-rise residential building was defined as a multi-story building consisting of between nine and fifteen stories. There were bulk regulations for lots greater than 20,000 square feet and lots smaller than 20,000 feet. For lots greater than 20,000 square feet, there was a minimum front yard setback of ten feet; a minimum rear yard setback of five feet; a maximum building height inclusive of indoor garage parking of fifteen stories and 180 feet exclusive of roof appurtenances; and a minimum open space requirement of ten percent of the lot size.

In enacting the R-5 ordinance, the Board determined it was not necessary to provide individual notice to property owners within 200 feet of the affected properties because the R-5 ordinance was implementing recommendations in the reexamination report. On March 30, 2023, over six years after the R-5 ordinance passed, plaintiff filed a complaint in lieu of prerogative writs challenging the R-5 ordinance on the ground that the town violated the Municipal Land Use Law

(MLUL), N.J.S.A. 40:55D-1 to -163, and due process in adopting the R-5 ordinance.

Later that year, the Town moved for summary judgment. In support, the Town argued because the time permitted to appeal an ordinance was only forty-five days, plaintiff's appeal filed over six years after the R-5 ordinance was enacted was untimely. Plaintiff cross-moved for summary judgment, seeking enlargement of the time to appeal pursuant to Rule 4:69-6(c). After conducting oral argument, on December 20, 2023, the judge granted the Town summary judgment, denied plaintiff's cross-motion, and dismissed plaintiff's complaint with prejudice.

In an accompanying written statement of reasons, the judge determined the Town properly enacted the R-5 ordinance because it carried out a directive included in the 2009 reexamination report. Therefore, according to the judge, the Town was not required to provide individual notice to adjacent property owners.[4] The judge also found plaintiff filed its complaint significantly later

---

[4] We reject plaintiff's contention the judge erred in ruling the Town was not required to provide individual notice. N.J.S.A. 40:55D-62.1 provides when a municipality proposes a change to "the classification or boundaries of a zoning district," notice must be given to all owners of real property within 200 feet of the proposed new district. However, individual notice is not required if, as here, the changes were recommended in a periodic general reexamination of the

than forty-five days after the passage of the R-5 ordinance, and there was no reason, in the interest of justice, to enlarge the time for appeal. Plaintiff's appeal in A-1564-23 followed.

### B. A-3880-23

On January 6, 2023, May Guttenberg published notice of its site plan application in the newspaper and mailed notice to property owners within 200 feet of the project, including plaintiff. The notice contained the time, date, and address of the Board's hearing where May Guttenberg's site plan application would be discussed and described May Guttenberg's plan to develop a "fifteen story mixed[-]use building" in the R-5 zone as permitted under the R-5 ordinance. The notice provided that May Guttenberg also sought bulk variances.[5]

---

master plan. N.J.S.A. 40:55D-62.1. See Cotler v. Twp. of Pilesgrove, 393 N.J. Super. 377, 379, 383-84 (App. Div. 2007) (explaining why individual notice to neighboring property owners is not required when a new zoning ordinance implements recommendations contained in a reexamination report or "results from a periodic general reexamination of the master plan"). Moreover, a reexamination must be completed at least once every ten years. N.J.S.A. 40:55D-89.

[5] May Guttenberg sought the following bulk variances: the minimum lot depth requirement was 200 feet, but the lot depth varied, and at the deepest point was only 175 feet; the front yard setback was supposed to be ten feet, but beginning at the fifth floor, proposed balconies encroach into the front yard due to the

The notice read:

> Applicant specifically seeks preliminary and final major site plan approval with variance and exceptional relief for the development of the [p]roperty with a fifteen[-]story mixed[-]use building, including . . . approximately 202 residential units, a five-story parking deck including approximately 206 parking spaces, and approximately 10,000 square feet of non-residential space (the "Application"). Amenities are also proposed on the [p]roperty as part of the development for the benefit of building residents. The Application also proposes on-site stormwater management, utilities, signage, lighting, landscaping, and hardscaping.

Plaintiff first discovered the Town had adopted the R-5 ordinance when it received notice of May Guttenberg's site plan application in 2023. Plaintiff's residents comprise more than twenty percent of the Town's population and its condominiums are located on Block 38 in the R-5 zone on the east side of Boulevard East. May Guttenberg's project was proposed for Block 38, Lot 4, located on the west side of Boulevard East between 68th and 69th Street, directly across the street from plaintiff's condominiums.

---

curved front property line; the side yard setback was supposed to be either zero or five feet, but on the south side of the property, a portion of the building was set back only 0.1 feet; the rear yard setback should have been five feet but near the service driveway the setback was only 0.1 feet; and open space should have been ten percent of the lot size, but the open space at ground level was only 4.3 percent of the lot size.

The project involved demolishing a two-story vacant nursing home and constructing a 176-foot high-rise building with fifteen stories, 202 residential units, parking, and a rooftop spa, pool, and terrace. Residential units would be constructed "on the fifth through fifteenth stories." "The cellar and first four stories, including the fourth[-]floor mezzanine," would contain "206 parking spaces." The roof terrace on "the fifth floor" and the roof on "the fifteenth floor" would include trees and open space.

Prior to the hearings on the application, the Board's attorney, Eric McCullough, authored an initial assessment of the application (the initial assessment), stating:

> Building height - The [a]pplicant states the project is [fifteen] stories. The Town Code defines a "story" as[] "the portion of a building included between the surfaces of any floor and the floor above it. If there is no floor above it, then the space between the floor and the ceiling next above it." [Guttenberg, N.J.,] Code [§] 28-2.2. Ordinarily, the Board considers a ground level used for parking to be a "story," and the definition would support that conclusion.
>
> The civil plans explain there are five stories of parking[] located on the ground/first floor[] and the second through fifth floors. However, the architectural plans describe parking on the ground and first through fourth floors. Thus, the architectural plans describe the second level as the "first floor." That numbering is inconsistent with the Town Code. (In the past, the

Board has asked applicants to revise their plans to identify a ground level story as the "first floor.")

The architectural plans create further confusion. The "fifth" floor, which would be the sixth story on the civil plans, contains [twelve] units and tenant amenities. The architectural plans show a generic floor plan for the "sixth" (seventh) through "fourteenth" (fifteenth) floors, or nine levels. However, it is clear that the plans are missing the last level of residential units. The fifth/sixth floor has [twelve] units. Each other floor has [nineteen] units. The nine levels with the typical floor plan plus the fifth/sixth floor reveals a shortfall in the total number of units, which the [a]pplicant states is 202:

9 stories x 19 units = 171 units + 12 units (fifth/sixth) = 183 units

There is a shortfall of [nineteen] units (202 - 183 = 19 units). It is clear that there are in fact [ten] stories utilizing the typical floor plan, plus the story with [twelve] units, plus [five] stories of parking, for a total of [sixteen] stories.

| | |
|---|---|
| Parking | 5 stories |
| Residential/amenities | 1 story |
| Typical residential plan | 10 stories |
| TOTAL | 16 stories |

Additionally[,] although the civil plans state the building is 180 feet, the architectural plans reveal the roof is at 186'-6" feet, with appurtenances up to 204'-8". Although the height may be another bulk variance, the sixteenth story creates more of a problem. As noted, a "high-rise" is defined as up to [fifteen] stories. A [sixteen]-story building would be a non-conforming use in the R-5 zone, requiring a use variance, which is

A-1564-23

a more complicated application. With only bulk variances, the application could proceed before the Board as a planning board. With a use variance, the Board would sit as a zoning board of adjustment.

This issue should be addressed with the [a]pplicant and its professionals.

Board hearings were conducted on January 18, 2023; February 22, 2023; March 8, 2023; and March 20, 2023. During the hearings, McCullough responded to questions regarding the sufficiency of the notice, confirming the notice was sufficient. McCullough also responded to plaintiff's counsel's challenge to the number of stories May Guttenberg claimed was encompassed in the project, stating it was the Board's prerogative to determine, based on the evidence presented, whether the building was fifteen or sixteen stories.

Numerous witnesses testified during the hearings. Peter Steck, plaintiff's expert planner, testified the building was at least sixteen, and possibly seventeen stories high, which was not permitted in the R-5 zone. Steck cited the town code to support his position that a cellar used for residential purposes should be considered the first story.[6] Steck believed the first floor of the building was

---

[6] Guttenberg, N.J., Code § 28-2.2, defines a cellar as "a story partially underground and having more than one-half of its clear height below the average level of the adjoining ground" which "shall not be considered in determining the required number of stories." The Code further provides the "lowest story or the

used for residential purposes because the lobby and the mail room were located there. However, he conceded it was a "fair interpretation" of the town code that if nobody was living in the cellar, it should not be considered a story. Steck also stated that, in his opinion, because there was parking in the mezzanine, it should be considered a separate story.

Neeraj Chander, plaintiff's architectural expert, reviewed the application and agreed with Steck that the building was seventeen stories, in violation of the fifteen-story limit in the R-5 zone. Chander believed the building's mezzanine level should be considered a separate story but conceded there were different definitions of mezzanine and it did not always mean a story.

On the other hand, John McDonough, May Guttenberg's planner, testified the ground floor was a cellar according to the town code. In support, he explained more than half of the area between the floor and the ceiling of the cellar was below the average grade and whether the ground floor was a cellar was determined by the average grade of the property.

---

ground [story] of any building, the floor of which is not more than [twelve] inches below the average contact ground level at the exterior walls of the building," and "[a]ny cellar and basement used for residential purposes . . . is deemed the first story." Guttenberg, N.J., Code § 28-2.2 (defining the first story).

A-1564-23

McDonough also discussed the positive criteria delineated in the MLUL and concluded the project satisfied criteria A, G, H, and I of N.J.S.A. 40:55D-2.[7] According to McDonough, the project would: provide modern upgraded housing in a community where some of the homes and buildings were very old; provide off-street parking so as not to burden the community with on-street parking; and promote a desirable visual environment, a beautiful building, and

---

[7] N.J.S.A. 40:55D-2 describes the purposes of the MLUL, including:

> a. To encourage municipal action to guide the appropriate use or development of all lands in this State, in a manner which will promote the public health, safety, morals, and general welfare;
>
> . . .
>
> g. To provide sufficient space in appropriate locations for a variety of agricultural, residential, recreational, commercial and industrial uses and open space, both public and private, according to their respective environmental requirements in order to meet the needs of all New Jersey citizens;
>
> h. To encourage the location and design of transportation routes which will promote the free flow of traffic while discouraging location of such facilities and routes which result in congestion or blight;
>
> i. To promote a desirable visual environment through creative development techniques and good civic design and arrangement.

A-1564-23

redevelopment of a site that has "outlived its useful life." McDonough stated none of the adverse impacts of the requested bulk variances were substantially adverse, given that the rear setback was next to a driveway and the reduced open space was mitigated by amenities in the building including balconies that are considered an enhanced open-air amenity.

May Guttenberg's architects, Cory Kessler and Jack Paruta, testified and discussed the project in detail. In addition, Scott Kennel, May Guttenberg's traffic consultant, discussed the traffic study he prepared for the application and testified his traffic analysis established the project would have a minimal impact on traffic and parking. Plaintiff's traffic expert, Michael Maris, reviewed Kennel's traffic study and concluded it was impossible to know the true traffic impact because Kennel had not studied the "impact on the adjacent roadway system" surrounding the properties affected by the application and had only considered one intersection.

On April 17, 2023, the Board adopted Resolution 2023-13, granting preliminary and final site plan approval with all requested variances. Addressing plaintiff's argument that the building was sixteen stories and not fifteen, the Board found not all levels of indoor parking should be treated as stories in the building. The Board considered the town code's definition of the

16

terms "story," "basement" and "cellar" and interpreted the term "story" to mean something used for residential purposes. The Board rejected Steck's argument that the lowest level of the building should be considered the first story because it was used for "residence purposes" given that it had a lobby and mailroom. The Board also rejected the assertion that the fourth-floor mezzanine was a separate story.

The Board granted the bulk variances because May Guttenberg satisfied the positive and negative criteria. Given the property's irregular shape, the Board granted the lot depth variance because "the lack of depth [did] not render the [p]roperty too small for the proposed use," considering its "minimal lot frontage." The Board found that granting variances for the front, rear, and side yard setbacks would not cause any detriment to the public. The Board also granted the open space variance, finding significant on-site tenant amenities, including rooftop terraces, were legitimate alternatives to open space. In support, the Board cited the town code which provides that open space is land used for recreation, agriculture, resource protection, amenity, buffers, and is freely accessible to all residents of the development. The Board's approval of

17

the application was conditioned on May Guttenberg paying $100,000 for sewer improvements as recommended by the Town engineer.[8]

On May 30, 2023, plaintiff filed a complaint in lieu of prerogative writs, challenging the Board's grant of site plan approval. Following a bench trial, on July 12, 2024, the judge sustained the Board's decision and dismissed plaintiff's complaint with prejudice. Plaintiff's appeal in A-3880-23 followed.

## II.

In A-1564-23, plaintiff raises the following points for our consideration:[9]

> POINT I
>
> THE R-5 ORDINANCE IS INVALID BECAUSE THE MLUL REQUIRES INDIVIDUAL NOTICE FOR PROPERTY OWNERS WITHIN THE AFFECTED ZONE AND WITHIN 200 FEET OF THE NEW BOUNDARY OF THE AFFECTED ZONE AND THAT DID NOT OCCUR.
>
> POINT II
>
> THE TOWN'S ADOPTION OF THE R-5 ORDINANCE SEVEN YEARS AFTER ADOPTING THE 2009 REEXAMINATION REPORT, WITHOUT PROVIDING INDIVIDUAL NOTICE, WAS ARBITRARY, CAPRICIOUS AND UNREASONABLE.

---

[8] May Guttenberg had requested information regarding how the amount was determined.

[9] We have eliminated sub-parts in the point headings for conciseness.

POINT III

GUTTENBERG'S PUBLISHED NOTICE OF THE SECOND READING FOR THE R-5 ORDINANCE IS DEFECTIVE, RENDERING THE ORDINANCE INVALID.

POINT IV

THE R-5 ZONING ORDINANCE IS INCONSISTENT WITH GUTTENBERG'S MASTER PLAN AND THE TOWN FAILED TO COMPLY WITH N.J.S.A. 40:55D-62[A].

POINT V

THE TIME PERIOD TO FILE THE APPEAL SHOULD BE ENLARGED UNDER [R.] 4:69-6(C) BECAUSE THE "INTEREST OF JUSTICE" REQUIRES JUDICIAL REVIEW OF THE PROCESS AND PROCEDURE BY WHICH THAT ZONE CHANGE WAS EFFECTUATED.

In A-3880-23, plaintiff raises the following points for our consideration:

POINT I

THE PLANNING BOARD LACKED JURISDICTION TO HEAR THE APPLICATION BECAUSE THE PROJECT EXCEEDS [FIFTEEN] STORIES AND REQUIRES A USE VARIANCE[.]

POINT II

THE PLANNING BOARD LACKED THE POWER UNDER N.J.S.A. 40:55D-70([B]) TO INTERPRET THE SCOPE AND MEANING OF THE ZONING ORDINANCE AND THE R-5 ZONE.

19                                                    A-1564-23

POINT III

FAILURE TO STRICTLY CONSTRUE ZONING ORDINANCE AND R-5 ZONE[.]

POINT IV

THE PUBLIC NOTICE WAS DEFECTIVE[.]

POINT V

THE APPLICANT DID NOT SATISFY THE BURDEN OF PROOF ON THE BULK VARIANCES; THE TRIAL COURT'S AFFIRMANCE OF THE BOARD'S DECISION WAS ARBITRARY, CAPRICIOUS AND UNREASONABLE.

POINT VI

THE OFF-TRACT SEWER CALCULATION WAS AND WILL CONTINUE TO BE HIDDEN FROM PUBLIC VIEW.

POINT VII

THE FAILURE TO STUDY SURROUNDING INTERSECTIONS AFFECTED BY THE PROJECT WAS ARBITRARY, CAPRICIOUS AND UNREASONABLE.

POINT VIII

CUMULATIVE ERROR DOCTRINE APPLIES.

III.

A. <u>A-1564-23</u>

Our analysis begins with established principles regarding our standard of review. "[W]e review the trial court's grant of summary judgment de novo under the same standard as the trial court." <u>Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh</u>, 224 N.J. 189, 199 (2016). That standard is well-settled.

> [I]f the evidence of record—the pleadings, depositions, answers to interrogatories, and affidavits—"together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact," then the trial court must deny the motion. <u>R.</u> 4:46-2(c); <u>see</u> <u>Brill v. Guardian Life Ins. Co. of Am.</u>, 142 N.J. 520, 540 (1995). On the other hand, when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law, summary judgment must be granted. <u>R.</u> 4:46-2(c); <u>see</u> <u>Brill</u>, 142 N.J. at 540.
>
> [<u>Steinberg v. Sahara Sam's Oasis, LLC</u>, 226 N.J. 344, 366 (2016).]

Where there is no material fact in dispute, "we must then 'decide whether the trial court correctly interpreted the law.'" <u>DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman</u>, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting <u>Massachi v. AHL Servs., Inc.</u>, 396 N.J. Super. 486, 494 (App. Div. 2007), <u>overruled in part on other grounds</u>, <u>Wilson ex rel. Manzano v. City of Jersey</u>

City, 209 N.J. 558 (2012)). Interpreting an ordinance is a purely legal matter. Reich v. Borough of Fort Lee Zoning Bd. of Adjustment, 414 N.J. Super. 483, 499 (App. Div. 2010). "We review issues of law de novo and accord no deference to the trial judge's [legal] conclusions . . . ." MTK Food Servs., Inc. v. Sirius Am. Ins. Co., 455 N.J. Super. 307, 312 (App. Div. 2018).

Courts recognize certain fundamental principles when considering a challenge to a zoning ordinance's validity. Significantly, "[m]unicipal ordinances, like statutes, carry a presumption of validity." Hutton Park Gardens v. Town Council of W. Orange, 68 N.J. 543, 564 (1975). "The judiciary will not evaluate the weight of the evidence for and against the enactment nor review the wisdom of any determination of policy which the legislative body might have made." Id. at 565. However, the presumption of validity "is not an irrebuttable one," id. at 564, and "a court may declare an ordinance invalid if in enacting the ordinance the municipality has not complied with the requirements of the statute." Riggs v. Twp. of Long Beach, 109 N.J. 601, 611 (1988) (citing Taxpayers Ass'n of Weymouth Twp. v. Weymouth Twp., 80 N.J. 6, 21 (1976)).

In particular, "a zoning ordinance must conform to MLUL requirements," Griepenburg v. Twp. of Ocean, 220 N.J. 239, 253 (2015), and may be invalidated "by a showing that the ordinance is 'clearly arbitrary, capricious or unreasonable,

22

or plainly contrary to fundamental principles of zoning or the [zoning] statute.'" Berardo v. City of Jersey City, 476 N.J. Super. 341, 355 (App. Div. 2023) (alteration in original) (citing Riggs, 109 N.J. at 610–11). Indeed, to withstand attack, zoning ordinances must be "substantially consistent" with the master plan, and "must be adopted in accordance with statutory and municipal procedural requirements." Riggs, 109 N.J. at 611-12.

Plaintiff argues the published notice of the second reading of the R-5 ordinance was defective because it did not provide a brief summary of the R-5 ordinance's main objectives and provisions. Plaintiff asserts the judge should have enlarged the time to file the appeal in the interest of justice.

The judge did not make a specific finding regarding whether newspaper notice for the second reading of the R-5 ordinance was sufficient. Nevertheless, the judge found plaintiff had not provided a valid reason to enlarge the time for appeal. According to the judge, plaintiff did not present an important novel constitutional question, there were no ex parte determinations of legal questions by administrative officials, and there was no public rather than private interest that required clarification.

The judge distinguished Willoughby v. Plan. Bd. of Deptford, 306 N.J. Super. 266, 277-78 (App. Div. 1997), because there, the development of the

23

rezoned property would have a substantial impact on the adjoining neighborhood, and the zoning ordinance had become a central issue in a municipal election. Here, the judge found there was no political upheaval like what had occurred in Willoughby. Instead, the judge relied on Rocky Hill Citizens for Responsible Growth v. Plan. Bd. of Rocky Hill, 406 N.J. Super. 384, 399-401 (App. Div. 2009), to find plaintiff's interest in the R-5 ordinance was private rather than public. According to the judge, even if plaintiff represented a significant number of residents in the town, this alone did not make its interest public. Further, the judge found the public interest in repose was significant since May Guttenberg had filed its site plan application relying on a seven-year-old ordinance that had never been challenged.

N.J.S.A. 40:49-2.1 provides when a municipality adopts an ordinance pursuant to the MLUL which is six or more pages in length, as here, the municipality must publish in the newspaper the "title" of the ordinance and "a brief summary of the main objectives or provisions of the ordinance." N.J.S.A. 40:49-2 states the publication in the newspaper should occur at least one week prior to the final adoption of the ordinance.

In Rockaway Shoprite Assocs., Inc. v. City of Linden, 424 N.J. Super. 337, 346–47 (App. Div. 2011) (citations omitted), we held:

A-1564-23

New Jersey requires at a minimum that published notice of a zoning ordinance creating new zones and uses applicable to an area identify and briefly describe those new zones and uses. This principle comports with court decisions of sister states interpreting similar notice statutes requiring that public notices contain a "brief summary" of the zoning ordinance's major changes and provisions. These cases have all followed the well-recognized principle, enunciated in 101A C.J.S. Zoning & Land Planning § 6 (1979):

> The notice required by statute must reasonably apprise the public or parties interested of the essence of the regulations to be adopted, that is, the changes to be made. The notice required must be clear and unambiguous and must be readily intelligible to the average citizen. It must not be overly general or misleading. In other words, the notice must unambiguously set forth the information which would give adequate warning to all persons whose rights may be adversely affected by any action of the zoning entity so that they may appear and have an opportunity to be heard.

In Rockaway, we determined the published notice was insufficient because it did not contain a brief summary of the ordinance's main objectives. Id. at 349. We explained:

> In rejecting the City's vague, generalized notice and requiring instead compliance with the "brief summary" mandate of N.J.S.A. 40:49-2.1, we do not mean to suggest that the notice's content be exhaustive or detailed, but only reasonably inform of the substance of

the proposed changes. A summary, after all, "is a statement that covers the main points concisely, but without detailed explanation, in a manner that serves to describe an object for the knowledge and understanding of others." Glazebrook v. Bd. of Supervisors, 587 S.E.2d 589, 591-92 (2003). Therefore, municipalities need not guess as to what constitutes proper notice as an identification of the property and a brief description of the new zones and uses will suffice. Because the notices in this case fell far short of this measure and such defect is jurisdictional and non-waivable on behalf of the public at large, the ordinances are invalid.

[Id. at 354-55.]

That said, adoption of a zoning ordinance without publishing the required notice prescribed in the MLUL renders the resultant ordinance invalid. Cotler v. Twp. of Pilesgrove, 393 N.J. Super. 377, 388 (App. Div. 2007); see Anderson's American Law of Zoning, § 4.13 at 275 (K. Young) (rev. 4th ed. 1995) (footnotes omitted) ("As is true of procedural requirements generally, the requirements for publication, service, and posting are mandatory; failure substantially to comply with them results in an invalid ordinance."); Osborne Reynolds, Handbook of Local Government Law § 120 at 462 (2001) (footnote omitted) ("These requirements are . . . mandatory; and a zoning ordinance passed without the required and properly noticed hearing will be void.").

Plaintiff asserts notice of the second reading of the R-5 ordinance was insufficient because it did not contain a brief summary of the main objectives or

provisions of the ordinance as required by N.J.S.A. 40:49-2.1.  For example, the notice did not include a description of which properties were to be rezoned and did not contain a brief summary of the R-5 ordinance's main objectives and provisions.  Plaintiff analogizes this case to Rockaway, where although the zoning lots were identified, we concluded notice was insufficient because there was no brief summary of the ordinance's main objectives and provisions.  424 N.J. Super. at 341, 349.

We agree the notice in Rockaway was more compliant with the MLUL than the notice provided here.  Ibid.  The notice provided here did not identify the properties affected by the new zoning district and did not contain a brief summary of the main objectives of the R-5 ordinance.  The only information the notice provided was that the R-5 ordinance would create the R-5 high-rise residential use zone.  It did not state what properties would be affected or what the parameters of the R-5 zone entailed.  It was not "clear and unambiguous and . . . readily intelligible to the average citizen" which properties were included in the R-5 zone and what changes would occur.  Id. at 347.  In our view, the notice failed to comply with a "clear statutory mandate."  Wolf v. Mayor and Borough Council of Shrewsbury, 182 N.J. Super. 289, 295 (App. Div. 1981).  Accordingly, we are constrained to invalidate the R-5 ordinance because the

published notice was fatally deficient in violation of the MLUL.  See Cotler, 393 N.J. Super. at 388.

Plaintiff asserts the judge should have enlarged the time to file the appeal given the Town's deficient notice and violation of the MLUL.  Rule 4:69-6(a) and (b)(3) provide a general statute of limitations for actions seeking to repeal an ordinance of forty-five days "from the publication of a notice once in the official newspaper of the municipality."  Pursuant to Rule 4:69-6(c), the court "may enlarge the period of time provided in paragraph (a) or (b) of this rule where it is manifest that the interest of justice so requires."  See Hopewell Valley Citizens' Grp., Inc. v. Berwind Prop. Grp. Dev. Co., L.P., 204 N.J. 569, 576–77 (2011).  In reviewing a trial court's decision to grant or deny relaxation of the forty-five-day rule, we must decide whether the court pursued a "manifestly unjust course."  Viviani v. Borough of Bogota, 336 N.J. Super. 578, 592-93 (App. Div. 2001) ("Our role is not to substitute our judgment for that of the trial court, but to decide whether the judge pursued a manifestly unjust course."), rev'd on other grounds, 170 N.J. 452 (2002).

Exceptions to the forty-five-day ordinance limitation provisions of the rule are warranted when cases involve "(1) important and novel constitutional issues; (2) informal or ex parte determinations of legal questions by

28

administrative officials; and (3) important public rather than private interests which require adjudication or clarification." Horsnall v. Wash. Twp. Div. of Fire, 405 N.J. Super. 304, 312-13 (App. Div. 2009) (quoting Brunetti v. Borough of New Milford, 68 N.J. 576, 586 (1975)). An additional reason to apply the "interest of justice" exception is when there is a "continuing violation of public rights." Borough of Princeton v. Bd. of Chosen Freeholders of Mercer, 169 N.J. 135, 152 (2001) (first quoting Brunetti, 68 N.J. at 586; then quoting Reilly v. Brice, 109 N.J. 555, 559 (1988)).

In Rocky Hill Citizens, 406 N.J. Super. at 400, we noted when dealing with public interest implications, the "number of plaintiffs in a lawsuit or signatures on a petition" is not dispositive of whether a matter meets the definition of "public interest." Even if an ordinance is of interest to a "limited public, this is not the public interest envisioned by the Court in permitting limited expansion of the rule." Id. at 401. Still, "[e]ven if a case involves purely private interests," a trial court "may conclude that the 'interest of justice' warrants an enlargement of the forty-five[-]day period." Gregory v. Borough of Avalon, 391 N.J. Super. 181, 189 (App. Div. 2007) (quoting Cohen v. Thoft, 368 N.J. Super. 338, 346-47 (App. Div. 2004)). "Whenever an application is made for such an enlargement, a court must weigh the public and private

interests that favor an enlargement against 'the important policy of repose expressed in the forty-five[-]day rule.'" Ibid. (quoting Borough of Princeton, 169 N.J. at 152-53). "The statute of limitations is designed to encourage parties not to rest on their rights." Borough of Princeton, 169 N.J. at 152 (citing Reilly, 109 N.J. at 559).

Nevertheless, courts have enlarged the forty-five-day requirement in circumstances like those presented here. In Wolf, 182 N.J. Super. at 295–96, we held when publication in a newspaper did not include "a brief summary of the main objectives or provisions of the ordinance," it was "not sufficient to alert a reasonably intelligent reader as to the nature and import of the substantial changes in the zone plan proposed by the borough." Because the amendment to the ordinance was passed in violation of the publication provisions set forth in the statute and the public has an interest in the MLUL being implemented properly, we determined "the trial judge mistakenly exercised his discretion by refusing to enlarge the period of time within which plaintiffs could have instituted this action." Id. at 296. We concluded "important public rather than private interests were involved." Ibid. Likewise, here, we are persuaded the judge erred in not enlarging the time for plaintiff to file the action because "[i]t

is manifest on the record before us that the interest of justice required that such relief be granted pursuant to R. 4:69-6(c)." Ibid.

In rejecting plaintiff's argument, the judge distinguished Willoughby. In Willoughby, 306 N.J. Super. at 270-73, the municipality changed the zoning of a parcel of land to permit a developer to construct a shopping center. Shortly thereafter, the new zoning ordinance became the central issue in an election, and the voters elected a new township council "committed to repealing the ordinance." Id. at 277. Before the ordinance was repealed, the developer sought and obtained site plan approval from the planning board. Id. at 271. A citizens group then filed a complaint in lieu of prerogative writs slightly over the forty-five-day deadline challenging the planning board's grant of approval to the developer. Id. at 272.

The trial judge refused to enlarge the forty-five-day limitation period and dismissed the complaint. Id. at 273. We reversed and determined because the dispute was public, rather than private, enlarging the time for appeal was justified. Id. at 277. We reasoned the election and the significant impact the zoning change would have on the residents of the adjoining neighborhood, among other factors, were evidence of the public's interest in the matter. Ibid. We also determined under the circumstances, the developer's "interest in repose"

31

did not "outweigh[] the public interest in a decision on the merits of [the] plaintiffs' claims." Id. at 278-79.

Here, the judge found Willoughby inapposite because there was no election to show the zoning ordinance was a matter of public interest. However, Willoughby also stands for the proposition that a violation of the MLUL can be considered a significant public interest that justifies enlarging the time for instituting an action. Id. at 277 ("Our courts have found a sufficient public interest to justify an extension of time for filing a prerogative writ action in a variety of circumstances, including challenges to the validity of ordinances on the ground that they were not adopted in conformity with the applicable statutory requirements."). Thus, a violation of the MLUL, as occurred here, is a matter of public interest.[10]

We agree with plaintiff that, under the circumstances, there is no public interest in repose. The Town can always act anew to readopt the R-5 ordinance with the proper notice. Contrary to the judge's finding that the public had an interest in repose because May Guttenberg filed its site plan application seven

---

[10] We do not agree with plaintiff's statement that because it represents a significant percentage of the Town's population, the matter constitutes a public interest. As we stated in Rocky Hill Citizens, 406 N.J. Super. at 399-400, the number of plaintiffs is not what defines a public interest.

years after adoption of an unchallenged ordinance, plaintiff filed its complaint challenging the R-5 ordinance almost immediately after receiving notice of the site plan application. Thus, we discern no unfairness in permitting plaintiff to challenge the R-5 ordinance.

In sum, the published notice in the newspaper was insufficient because it did not include a brief summary of the R-5 ordinance's main objectives and provisions in violation of the MLUL. We conclude the judge erred in not enlarging the time for appeal in the interest of justice to allow plaintiff to challenge the ordinance because compliance with the MLUL is a public, not private interest. We therefore reverse the judge's decision granting the Town summary judgment and denying plaintiff's cross-motion for summary judgment, and invalidate the R-5 ordinance because it was adopted in violation of the MLUL. Based on our decision, we need not address plaintiff's remaining arguments.

## B.  A-3880-23

Because we have invalidated the R-5 ordinance in A-1564-23, the Board's site plan approval is rendered void. Accordingly, we reverse the July 12, 2024 order in A-3880-23.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Hanley*

Clerk of the Appellate Division

A-1564-23